# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Cr. No. 09-180 |
| | ) | Civil Action No. 14-1441 |
| BONNIE GARDNER, | ) | Judge Nora Barry Fischer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**I. INTRODUCTION**

This matter is before the Court on a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 ("Motion") filed by *pro se* Defendant Bonnie Gardner ("Defendant" or "Gardner"). (Docket No. 92). Defendant claims that her trial counsel was ineffective and seeks to vacate her guilty plea and sentence of 42 months' incarceration for mail and wire fraud conspiracy in violation of 18 U.S.C. § 1349. (Docket Nos. 95, 97). The Government filed a Motion to Dismiss Defendant's Motion on the basis that Defendant waived her right to file a motion under 28 U.S.C. § 2255 in a plea agreement with the Government. (Docket No. 102).

For the following reasons, the Court will enforce the valid waiver contained in Defendant's plea agreement. Accordingly, the Government's motion will be granted and Defendant's § 2255 motion will be denied.

**II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On February 25, 2012, a federal grand jury returned a twenty-five count superseding indictment against Defendant and a co-defendant, Frank S. Guzik. (Docket No. 10). The superseding indictment charged Defendant with one count of conspiracy to commit mail and wire

1

fraud, in violation of 18 U.S.C. § 1349 (Count One), five counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two through Six), and nine counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts Seven through Fifteen). (*Id.*).

On May 10, 2013, Defendant pled guilty to Count One of the superseding indictment pursuant to a plea agreement with the Government. (Docket Nos. 70-72, 76). In exchange for the Government's agreement to dismiss Counts Two through Fifteen, Defendant acknowledged responsibility for the charges in the superseding indictment, agreed to pay mandatory restitution, and agreed to waive her right to take a direct appeal from her sentence or to collaterally attack her conviction or sentence, except under limited specified circumstances. (Docket No. 76 at 16-17). The plea agreement also contained a proposed stipulated sentence of forty-two months' incarceration. (*Id.* at 18). Following an extensive colloquy by the Court to determine Defendant's competency and understanding of the plea agreement, the Court accepted Defendant's change of plea and entered a judgment of guilt as to Count One of the superseding indictment. (Docket Nos. 71, 76). The Court deferred acceptance of the plea agreement's stipulated sentence pending receipt of a Presentence Investigation Report. (Docket No. 76).

On October 18, 2013, the Court conducted a sentencing hearing. (Docket No. 88). The Court noted that Defendant's total offense level was 29 and her criminal history category was I, producing an advisory guideline range of 87 to 107 months' incarceration. (*Id.* at 6). After considering the factors set forth in 18 U.S.C. § 3553(a), the Court sentenced Defendant to forty-two months' incarceration as stipulated in the plea agreement. (*Id.*).

On October 23, 2014, Defendant filed the instant *pro se* motion to vacate. (Docket No. 92). This Court responded by entering its standard order pursuant to *United States v. Miller*, 197

F.3d 644 (3d Cir. 1999), advising Defendant that all federal constitutional claims had to be included in a single habeas corpus petition and of her right to: (1) withdraw the pending petition and file one new, all-inclusive § 2255 petition setting forth every ground which may entitle her to relief from her conviction and sentence, provided that such motion is timely; (2) amend the § 2255 motion presently on file to include any additional claims or materials she wished to raise; or (3) choose to proceed with the petition as filed. (Docket No. 93). Defendant indicated that she wished to proceed (Docket No. 95) and filed a brief in support of her motion (Docket No. 97).

The Government filed the instant motion to dismiss on January 13, 2015. (Docket No. 102). Defendant filed a brief in opposition to the Government's motion on February 12, 2015 (Docket No. 104), and the Government filed a reply on March 20, 2015 (Docket No. 107). Defendant filed an "addendum" to her Section 2255 motion on April 13, 2015. (Docket No. 108). The official transcripts of the May 7, 2013 final pretrial conference, May 10, 2013 change-of-plea hearing and October 18, 2013 sentencing hearing were all filed and considered by the Court. (Docket Nos. 76, 101, 106). This matter is now ripe for review.

### III. STANDARD OF REVIEW

A prisoner in federal custody may move to vacate his or her sentence under 28 U.S.C. § 2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "A prisoner seeking relief on the grounds of ineffective assistance of counsel bears the burden to demonstrate two requirements," *United States v. Seeley*, 574 F. App'x 75, 78 (3d Cir. 2014), which were initially set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant "must establish that (1) the

performance of counsel fell below an objective standard of reasonableness; and, (2) counsel's deficient performance prejudiced the defense." *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 688, 694); *see also Roe v. Flores–Ortega*, 528 U.S. 470, 476–477 (2000) (citing *Strickland*, 466 U.S. at 688, 694) (same). The United States Court of Appeals for the Third Circuit has "endorsed the practical suggestion in *Strickland* [that the Court may] consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005), which quoted *United States v. McCoy*, 410 F.3d 124, 132 n. 6 (3d Cir. 2005)); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Generally, a district court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also Lilly*, 536 F.3d at 195. If a hearing is not held, the district judge must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). Similarly, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation." *United States v. Knight*, 2009 WL 275596, at *13 (W.D.Pa. 2009) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir.

2000)).

## IV. DISCUSSION

The Government seeks dismissal of Defendant's motion on the basis that she knowingly and voluntarily waived the right to file a motion to vacate in her plea agreement and enforcement of the waiver would not result in a miscarriage of justice. It is well-settled that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) (citations omitted). The Third Circuit has repeatedly held that a criminal defendant may effectively waive the right to file a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 in a plea agreement with the government. *Mabry*, 536 F.3d at 241; *see also United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) ("The ability to waive statutory rights . . . logically flows from the ability to waive constitutional rights."). Determining whether a waiver is effective is a threshold issue and, if the waiver is effective, a criminal defendant is jurisdictionally barred from pursuing habeas relief. *Mabry*, 536 F.3d at 242.

In determining whether a waiver is effective, the district court must examine "the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." *Id*. at 237. A criminal defendant has the initial burden "of presenting an argument that would render his waiver unknowing or involuntary" but the district court has "an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Id*. at 237-38 (citing *Khattak*, 273 F.3d at 563).

**A. Knowing and Voluntary Nature of the Plea Agreement**

At the outset of Defendant's change of plea hearing, the Court established that Defendant had completed high school, earned a nursing degree, attended college classes, and had no history of mental or emotional health problems or drug and alcohol abuse. (Docket No. 76 at 4-6). Defendant averred that she was not under the influence of drugs or alcohol and was not under the care of a physician, therapist, psychologist, or psychiatrist for any ailments which would have affected her ability to understand the proceedings. (*Id*. at 5). The Court observed Defendant's demeanor and responses during her colloquy and concluded that she was an intelligent and articulate individual with an acute understanding of the proceedings. (*Id*. at 6). Moreover, the record reflected that Defendant was able to successfully cooperate with a co-conspirator to perpetuate a sophisticated and calculated scheme of fraud. (Docket No. 78 ¶¶ 7-13). Based on the foregoing, the Court concluded that Defendant was competent to meaningfully participate in the proceedings and enter a guilty plea. (Docket No. 76 at 6).

After ensuring that Defendant was competent to plead, the Court queried Defendant to determine whether she had discussed her case with her attorney and whether she was satisfied with the representation provided by counsel. (*Id*. at 6-7). Defendant answered each question in the affirmative. (*Id*.).

The Court proceeded to advise Defendant of the constitutional rights and protections that she would be giving up by virtue of her guilty plea, as well as the statutory penalties associated with the charges against her. (*Id*. at 7-13). Defendant indicated that she understood each of those rights and still wished to plead guilty. (*Id*. at 13).

Turning to the content of the plea agreement, the Court directed counsel to summarize the terms of the agreement on the record. (*Id*. at 16). Counsel explained, *inter alia*, that Defendant

had "agreed to waive her right to take a direct appeal from her sentence or to collaterally attack her conviction or sentence . . ." (*Id*. at 17). Defendant confirmed on the record that she consented to each of the terms contained in the agreement. (*Id.* at 19). The Court then explored the appellate and collateral attack waiver provision with Defendant in greater detail:

> The Court: Immediately under (5) and subparagraphs (a) and (b), at the bottom of page 2 and going on to page 3, there's another important provision because, pursuant to the language there, you have further waived your right to file a motion to vacate sentence under Title 28 United States Code, Section 2255, attacking your conviction or sentence and the right to file any other collateral proceeding attacking your conviction or sentence. Do you see that there?
>
> Defendant: Yes, I do.
>
> The Court: Do you understand that, ma'am?
>
> Defendant: Yes, I do.
>
> The Court: Accordingly, you have limited rights to an appeal. Has Mr. Dietz reviewed with you your appeal rights and what you may be waiving?
>
> Defendant: Yes, he has.
>
> The Court: And so, you understand that your rights to appeal are limited?
>
> Defendant: Correct.
>
> The Court: You should also understand that waivers of appeal are generally permissible if they're entered into knowingly and voluntarily, unless they would somehow work a miscarriage of justice. I've examined the record, such as I have it before me in this case, I've had the opportunity to observe you here in Court today, in the jury selection, pretrial trial proceedings, status conferences, and the like. I've heard your responses to my questions and, at this time,

> I do not find any basis for invalidating your waivers in this case.

(*Id*. at 20). At all times, Defendant stated that she understood and agreed to each of the terms set forth in the plea agreement and was satisfied with the deal that she had reached with the Government. (*Id*. at 14-23, 38-39).

The Court conducted a sentencing hearing on October 18, 2013. The Court noted that Defendant's total offense level was 29, her criminal history category was I, and her advisory guideline range for Count One was 87 to 107 months. (Docket No. 101 at 6). However, the Court acknowledged that the plea agreement contemplated a stipulated incarceration term of 42 months and that the probation office had offered no objection to that sentence. (*Id*.). Based on the facts and circumstances of the case, as well careful consideration of all pertinent factors, the Court agreed to adopt the stipulated sentence outlined in the plea agreement. (*Id*. at 6-11, 16-21). That sentence represented a significant variance below the advisory guideline range. (*Id*. at 11).

In short, both counsel and the Court clearly outlined the contours of Defendant's collateral attack waiver on the record. The clear language of that waiver appears in a plea agreement containing Defendant's signature. Defendant, a savvy and intelligent individual, affirmatively represented on several occasions that she understood the rights she was giving up and wished to proceed with a plea of guilt. In exchange for her plea, Defendant received the precise sentence stipulated in the plea agreement. Based on the foregoing, the Court finds that Defendant knowingly and voluntarily waived her right to collaterally attack her sentence under Section 2255 and that this waiver is enforceable.

**B. Miscarriage of Justice**

Having determined that the waiver was knowing and voluntary, the Court must next consider "whether enforcement [of the waiver] would work a miscarriage of justice" under the facts at hand. *Mabry*, 536 F.3d at 237. In so doing, the Court applies a "common sense approach" that takes into account "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting that error on the government, and the extent to which the defendant acquiesced in the result." *Id*. at 242-43 (internal citations and quotations omitted). "Courts apply the miscarriage of justice exception sparingly and without undue generosity, but with the aim of avoiding manifest injustice." *United States v. Mitchell*, 538 F. App'x 201, 203 (3d Cir. 2013) (citing *Khattak*, 273 F.3d at 563).

Defendant contends that enforcement of the collateral attack waiver would effectuate a miscarriage of justice because such waivers inherently create a conflict of interest between a criminal defendant and her trial counsel. Defendant bases this argument on a recent decision by the Kentucky Supreme Court and advisory opinions rendered by the Ethical Advisory Committee of the National Association of Criminal Defense Lawyers ("NACDL") and the Pennsylvania Bar Association Legal Ethics and Professional Responsibility Committee ("PBA Committee). Each concluded that it is a conflict of interest for a defense attorney to advise a client to accept a plea agreement that contains a waiver of ineffective assistance of counsel claims related to defense counsel's own performance. *See* NACDL Formal Opinion 12-02 (Oct. 2012) ("[I]t is NACDL's position that defense counsel has an ethical and constitutional duty to object to and refuse to sign any plea agreement provision that amounts to a waiver of post-conviction remedies."); PBA Committee Formal Opinion 2014-100 (opining that it is a conflict of interest for a lawyer to advise

a client to accept a plea agreement that includes a waiver of ineffective assistance of counsel claims concerning his or her own representation); *United States v. Kentucky Bar Ass'n*, 439 S.W.3d 136, 157-58 (Ky. 2014) (holding that collateral attack waivers create a non-waivable conflict of interest between the defendant and his attorney).

As an initial matter, the Court notes that advisory opinions from ethics committees and decisions by state courts are not binding on federal courts. *See United States v. Joseph*, 2014 WL 2002280, at *1 (W.D. Pa. May 15, 2014) ("Ethics Advisory Opinions are not binding on federal courts."); *United States v. Shebetich*, 2015 WL 2106013, at *1 (W.D. Pa. May 6. 2015) ("[D]ecisions by . . . a State Court in Kentucky are not binding on this Court."). Moreover, the majority of courts in this district have continued to enforce knowing and voluntary collateral attackers waivers despite the ethical considerations raised in the advisory opinions. As Judge Ambrose recently explained:

> Generally, in this Circuit, waivers of the right to collateral attack are valid if entered into knowingly and voluntarily, and will divest the district court of jurisdiction over a collateral attack. *United States v. Khattak*, 273 F.3d 557, 558 (3d Cir. 2001); *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008). Although the attorney ethics surrounding such waivers have recently been called into question, our Court of Appeals has since affirmed their enforceability as a legal matter. *E.g.*, *Muller v. Sauers*, 523 Fed. Appx. 110, 111-12 (3d Cir. 2013). *Khattak*, which rejected an argument similar to that which Defendant now advances, remains in force in this Circuit generally, and in the collateral attack context specifically. *See, e.g., United States v. Murray*, 483 Fed. Appx. 690 (3d Cir. 2012). As the above-referenced Ethics Opinion acknowledges, the Advisory Committee's position is "aside from whether the courts might approve such waivers." Ethics Advisory Opinions are not binding on federal courts. Although our Court of Appeals may someday declare collateral attack waivers per se invalid in light of the ethical dilemmas they present, it has not done so to date. *Cf. United States v. Grimes*, 739 F.3d 125 (3d Cir. 2014). Absent guidance from our appellate court, I am unwilling to arrive at such a rule.

*Joseph*, 2014 WL 2002280, at *1. *See also Shebetich*, 2015 WL 2106013, at *1-2 (enforcing a collateral attack waiver provision after concluding that *Khattak*, *Mabry* and *Goodson* each remain binding despite the recent advisory opinions); *Stitt v. United States*, 2015 WL 1489477, at *1 (W.D. Pa. Mar. 31, 2015) (finding that collateral attack waivers remain binding in this district so long as they are knowing and voluntary and will not work a miscarriage of justice); *United States v. Brownlee*, 2014 WL 3735583, at *3 (W.D. Pa. July 28, 2014) (concluding that collateral attack waivers remain "valid and enforceable" in this circuit despite the recent criticism from ethical committees); *United States v. Valentine*, 2014 WL 1884211, at *2 (W.D. Pa. May 12, 2014) (same). *But see Williams v. United States*, 2014 WL 4060263, at *13-14 (W.D. Pa. Aug. 14, 2014) ("[T]his court is of the opinion that it would not be in the interests of justice to enforce [collateral attack] waivers now that the PBA Committee has indicated that such waivers should never have been included in written plea agreements in the first instance.").

The Court also recognizes that the Third Circuit has consistently upheld appellate and collateral attack waivers under the premise that such waivers "may assist defendants in making favorable plea bargains . . . providing defendants a valuable bargaining chip in the plea process." *Khattak*, 273 F.3d at 562. When confronted with the same ethical arguments raised in the instant case, the Third Circuit recently declined to adopt a blanket rule prohibiting such waivers. *See Mitchell*, 538 F. App'x at 203 (acknowledging the ethical concerns raised by several state bar association ethical committees but "adher[ing] to the case-by-case evaluation" set forth in *Khattak* "which requires determining the validity of each appellate waiver based on its terms and the circumstances in that case."). *See also United States v. Grimes*, 739 F.3d 125, 130 (3d Cir. 2014)

11

(finding an appellate waiver valid and enforceable despite the defendant's argument that such waivers are *per se* invalid if they fail to "carve out claims of ineffective assistance concerning the same attorney who counseled the plea," but noting that the Court might revisit the issue in a future decision under different facts).

After careful consideration, this Court agrees, consistent with *Khattak* and *Mabry*, that the collateral attack waiver in Defendant's plea agreement is enforceable. As noted above, Defendant's agreement to that provision assisted her in negotiating a stipulated sentence that was significantly lower than the advisory guideline range applicable to her crimes. At sentencing, Defendant received the precise sentence that she bargained for. Under these facts, the Court finds that no miscarriage of justice will result from enforcement of the waiver.

## V. CONCLUSION

For the reasons stated herein, Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is denied. Moreover, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right and is not entitled to a certificate of appealability. An appropriate order follows.

/s/ Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Date: August 7, 2015

cc/ecf: All counsel of record

    Defendant Bonnie Gardner, *pro se*
    USMS 33388068
    Federal Prison Camp Alderson
    Post Office Box A
    Alderson, WV 24910